# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

EFRAIN F.,[1]
       Plaintiff

    v.

FRANK BISIGNANO, *Commissioner of Social Security*,
       Defendant

No. 25 CV 3905

Judge Jeremy C. Daniel

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Plaintiff Efrain F.'s appeal of the Commissioner of the Social Security Administration's ("Commissioner") decision denying his application for disability insurance benefits and supplemental security income. (R. 14.) The Commissioner found that the plaintiff was not disabled and therefore not eligible for the benefits the plaintiff sought. An administrative law judge similarly denied the plaintiff's claims. This appeal followed, and the parties filed cross motions for summary judgment.[2] For the reasons stated in this order, the Court grants the plaintiff's motion for summary judgment, (R. 14), and denies the Commissioner's motion for summary judgment, (R. 16).

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to the plaintiff only by his first name and the first initial of his last name.

[2] The plaintiff filed a "Brief in Support of Reversing the Decision of the Commissioner of Social Security." (R. 14.) The defendant filed a "Memorandum in Support of Motion for Summary Judgment" without a corresponding motion. (R. 16.) The Court construes each of these as motions for summary judgment.

## BACKGROUND

### I. PROCEDURAL HISTORY

In March 2023, the plaintiff submitted applications for a period of disability, disability insurance benefits, and supplemental security income. (R. 10-1 at 15 (the "Administrative Record" or "AR").)[3] The Commissioner denied the plaintiff's claims initially in January 2024, and again upon reconsideration the next month. (*Id.*) The plaintiff then requested and received a hearing in August 2024 before an Administrative Law Judge ("ALJ"), at which he and a vocational expert testified. (*Id.*) After the hearing, the ALJ issued a written decision denying the plaintiff's claims. (*Id.* at 15–25.) The plaintiff then appealed that decision to the Appeals Council, which denied his request to review the decision. (*Id.* at 1.) Accordingly, the Commissioner's decision is final and ripe for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

### II. FACTUAL BACKGROUND

The plaintiff alleges that his disability began in December 2022. (AR at 228.) He stopped working that month due to his conditions and has not engaged in "substantial gainful activity" since then. (*Id.* at 18, 283.) The plaintiff's stated conditions include obesity, sleep apnea, back spasms, concussions, and trouble walking. (*Id.* at 18.) These conditions limit the plaintiff's ability to stand, sit, lift, bend, and carry. (*Id.* at 283, 366, 372.) He also suffers from high cholesterol, (*id.* at 54), lower back pain, (*id.* at 54–56), painful and swollen ankles and legs, (*id.* at 54–

---

[3] For citation purposes, the Court cites to the AR's corresponding Bates number(s). For other ECF filings, the Court cites to the page number(s) in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

56, 363, 385–90), a thyroid condition, (*id.* at 54), and an inability to stay awake, (*id.* at 63–64). He also got in a car accident in 2022 after falling asleep while driving, which caused new sources of pain and triggered existing ones. (*Id.* at 61, 379.)

As a result, the plaintiff testified that his ability to engage in daily life activities is limited. (*Id.* at 57–68.) He can do some cleaning, prepare some meals, and do some shopping by himself. (*Id.*) But for many of those tasks, among others, he requires the assistance of others, such as his girlfriend. (*Id.*)

### III.     THE ALJ'S DECISION

The ALJ analyzed the plaintiff's claim for benefits under the Social Security Administration's five-step framework. *Hess v. O'Malley*, 92 F.4th 671, 677 (7th Cir. 2024). This framework requires the ALJ to sequentially consider

> (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner; (4) whether the claimant can perform his past relevant work; and (5) whether the claimant is capable of performing work in the national economy.

*Id.* (citations omitted).  At step one, the ALJ found that the plaintiff met the SSA's insured status requirements, meaning he was unemployed. (AR at 17.) While the plaintiff engaged in some work after his disability onset date, that work activity did not rise to the level of substantial gainful activity. (*Id.* at 18.) At step two, the ALJ found that the plaintiff's severe impairments included obstructive sleep apnea ("OSA"), obesity, osteoarthritis of his left ankle, and cervical spondylosis. (*Id.* at 18.) He found that the plaintiff also had two non-severe impairments: hypothyroidism and diabetes mellitus. (*Id.*) The severe impairments limit the plaintiff's ability to "perform

basic work activities," but the non-severe impairments do not. (*Id.*) At step three, the ALJ concluded that those impairments did not rise to the severity of any listed impairment in 20 C.F.R. § 404.1520(d). This meant that the ALJ proceeded to determine the plaintiff's residual functional capacity ("RFC"). (*Id.* at 19–23.). (*Id.*)

An RFC assesses "what work-related activities the claimant can perform despite h[is] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004) (citing 20 C.F.R. § 404.1545(a)(1)). A claimant's RFC is relevant to both steps four and five, which relate to the claimant's ability to perform his past relevant work (step four) or adjust to a different job in the national economy (step five). If the claimant can perform either his prior work or other work in the national economy, he is not disabled. 20 C.F.R. §§ 404.1520(f)–(g).

In laying out the plaintiff's RFC, the ALJ considered the plaintiff's testimony, medical opinions from examiners and doctors who treated the plaintiff, and other prior administrative medical findings. (AR at 19.) After providing a summary of the evidence in the record, the ALJ concluded that the plaintiff could perform "light work." (*Id.* (citing 20 C.F.R. §§ 404.1567(b), 416.967(b)).) The ALJ found that the plaintiff could lift, carry, and push/pull twenty pounds occasionally and ten pounds frequently; sit up for six hours of a standard eight-hour workday and stand or walk for two hours; occasionally push, pull, kneel, crawl, climb ramps and stairs, and tolerate exposure to certain workplace hazards; and frequently stoop, crouch, and tolerate exposure to other external hazards such as extreme weather or concentrated fumes. (*Id.*) While the ALJ accepted that the plaintiff's impairments "could

reasonably be expected to cause" his alleged symptoms, he concluded that the plaintiff's statements regarding the "intensity, persistence and limiting effects of these symptoms" did not comport with the evidence. (*Id.* at 21.)

Based on that RFC, the ALJ at step four determined that the plaintiff could perform his prior job working as a security guard. (*Id.* at 23.) At step five, the ALJ found that there were other jobs in the national economy that the plaintiff could also perform based on his RFC, age, education, and work experience. (*Id.* at 23–24.) As a result, the ALJ concluded that the plaintiff had not been under a disability since December 2022. (*Id.* at 24–25.)

## LEGAL STANDARD

The Social Security Act permits a federal district court to review an ALJ decision on an application for benefits. 42 U.S.C. § 405(g). The Court's review is confined to deciding whether the decision is based on substantial evidence and appropriate law. *Hess*, 92 F.4th at 676. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019)). This is "not a high threshold." *Id.* But "this does not mean that [the court] will simply rubber-stamp the [ALJ's] decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). The Court will review the entire administrative record, but will not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's." *Warnell v. O'Malley*, 97 F.4th 1050, 1052–53 (7th Cir. 2024).

An ALJ's decision will be upheld if it "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (quoting *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). This requires an ALJ's decision to "build an accurate and logical bridge" between the evidence and his conclusion. *Hess*, 92 F.4th at 676. A decision cannot stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citation omitted).

## ANALYSIS

The plaintiff argues that the ALJ reversibly erred in four ways, by: discounting an opinion of treating provider Dr. Norman James, finding the plaintiff able to frequently stoop, failing to properly evaluate some of the plaintiff's physical symptoms, and inaccurately assessing the plaintiff's subjective statements about his conditions. (*See generally* R. 14; R. 17.) The Court addresses each argument in turn.

### I. ASSESSMENT OF DR. JAMES' OPINION

#### A. The July 2024 Opinion

Dr. James concluded that the plaintiff could perform "less than sedentary work." (AR at 22.) Specifically, Dr. James opined that the plaintiff was unable to walk a city block without rest or severe pain, that he could sit for ten minutes before needing to get up, and he could stand for fifteen minutes before needing to sit or walk around. (*Id.* at 380.) In an eight-hour workday with normal breaks, Dr. James concluded that the plaintiff could sit, stand, and walk for less than two hours. (*Id.* at 381.) Additionally, he opined that the plaintiff would need to take a twenty-minute break every thirty minutes due to muscle aches, fatigue, shortness of breath, falling

6

asleep, and pain. (*Id.*) If the plaintiff sat for prolonged periods, he would need to elevate his legs to waist level for six hours of the standard eight-hour workday. (*Id.*)

Dr. James also concluded that the plaintiff would need a cane or walker, and that he had "significant limitations" with reaching or handling. (*Id.*) In terms of the plaintiff's ability to lift and carry, Dr. James concluded that the plaintiff could carry less than ten pounds or less "rarely" and could never carry an amount above that. (*Id.*) Based on the above, Dr. James also opined that the plaintiff was likely to be absent from work more than four days a month due to his impairments. (*Id.* at 382.)

### B.     The ALJ's Assessment of Dr. James' July 2024 Opinion

The ALJ found Dr. James' opinion not persuasive because "it is not consistent with or supported by the record." (AR at 22.) In making a persuasiveness determination, an ALJ considers the medical opinion's supportability, consistency, the provider's relationship with the plaintiff, the provider's specializations (if any), and any other relevant factors. 20 C.F.R. § 416.920c(c). The first two are the most salient. *Id.* § 416.920c(b)(2). An ALJ is entitled to discount a medical opinion, even from a treating provider, if he finds the opinion unsupported by or inconsistent with substantial evidence. *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022).

As to the conclusions regarding required breaks and missing work, the ALJ found them inconsistent with the "normal clinical findings" and "normal diagnostic findings" that the plaintiff had a non-antalgic gait, intact strength, some swelling in his left ankle, and a normal x-ray of his back. (*Id.* at 23.) As to the conclusion about leg elevation, the ALJ reasoned that while the record showed the plaintiff had trace edema and swelling, that did not account for a need for the plaintiff to elevate his legs

7

for six hours. (*Id.*) The ALJ also noted that the plaintiff did not testify about a need to elevate his legs. (*Id.*) Dr. James provided the plaintiff with "only conservative care," noted that the plaintiff took medication that helped manage his pain, and did not mention further procedures. (*Id.*)

The plaintiff challenges the ALJ's discounting of Dr. James' opinion regarding the need for six hours of leg elevation per day. (R. 14 at 4–6.) Specifically, he argues this discounting was erroneous because the ALJ "provided no evidentiary basis for how he understood what amount of leg elevation might be warranted." (R. 14 at 4.) The ALJ credited evidence in the record showing that the plaintiff experienced some edema and occasional swelling but concluded that Dr. James' opinion that this warranted six hours of leg elevation unsupported. (*Id.* at 22.)

The ALJ reasonably viewed Dr. James' opinion as inconsistent with the plaintiff's own testimony at the hearing during which the plaintiff did not mention a need to elevate his legs, clinical findings that showed the plaintiff had intact strength, and diagnostic findings that showed some swelling and a normal x-ray. The ALJ also found the opinion inconsistent with Dr. James' own treatment notes, which documented that the plaintiff received only "conservative care," did not mention a need for future procedures, and noted that the plaintiff's medication "helped with his pain." (AR at 20.) These were sufficient bases for the ALJ to conclude that the opinion was inconsistent with substantial evidence in the record. *See Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015) (affirming ALJ's decision to afford little weight to treating provider opinion because it was inconsistent with other evidence).

The plaintiff emphasizes evidence elsewhere in the record establishing his edema and swelling of his ankle and leg and argues that the ALJ supplanted his own interpretation of medical evidence with Dr. James'. (R. 14 at 4–6; R. 17 at 1–3.) But the ALJ need not mention every shred of medical evidence, and the Court cannot reweigh evidence in its review. *Warnell*, 97 F.4th at 1053. Here, the ALJ cited to and considered evidence of the plaintiff's edema and swelling, and balanced it against other evidence in the record. While an ALJ cannot ignore relevant evidence or use his judgment to make medical findings, *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007), he may weigh the evidence and draw appropriate inferences from it. *Young*, 362 F.3d at 1001. The ALJ evaluated the relevant evidence in the record and sufficiently articulated its link to his conclusion. *Berger*, 516 F.3d at 545. That the evidence could have been weighed differently does not mean the ALJ's decision was not based on substantial evidence. *Gedatus v. Saul*, 994 F.3d 893, 901–02 (7th Cir. 2021). Because the ALJ sufficiently articulated his reasoning for discounting Dr. James' opinion, the Court does not find error in this part of the ALJ's decision.

## II. THE PLAINTIFF'S ABILITY TO STOOP

The plaintiff argues that the ALJ reversibly erred in concluding that the plaintiff could frequently stoop. (R. 14 at 6–8.) Pertinent regulations define stooping as "bending the body downward and forward by bending the spine at the waist." SSR 85-15, 1985 WL 56857 (Jan. 1, 1985). "Frequently" means an ability to do so for up to two-thirds of an eight-hour workday. SSR 83-10, 1983 WL 31251 (Jan. 1, 1983).

Dr. Wasay Ahmed, a consultative examiner, noted that the plaintiff's lumbar and hip flexion was fifty degrees—short of the full range of ninety degrees—and

concluded that the plaintiff had difficulty bending. (AR at 366, 372.) The ALJ did not discredit or directly address Dr. Ahmed's conclusion regarding the plaintiff's stooping limitations. The ALJ did reference other observations from Dr. Ahmed's 2023 findings, some of which relate to the plaintiff's ability to stoop. (*Id.* at 20.)

The Commissioner argues that the ALJ's determination that the plaintiff can frequently stoop is supported by other objective evidence in the record. (R. 16 at 10.) For instance, prior administrative findings of Doctors Stern and Reddy each support the ALJ's determination. (*See* AR at 83, 91, 99, 107.) While this may be true, the ALJ did not explain how he came to his conclusion in light of the conflicting medical opinions, nor did he expressly rely on these two opinions when stating how he arrived at his determination of the plaintiff's ability to stoop. This was error. *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2002) (ALJs are obligated to explain how they resolved conflicting medical assessments). The ALJ's RFC assessment with respect to the plaintiff's ability to stoop fell short of the articulation requirement. *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (ALJ must provide "a good explanation" for dismissing opinion of agency's own consultative examiner). The ALJ's decision therefore was not sufficiently articulated or based on substantial evidence.

This is particularly true where, as here, the RFC failed to discuss the ALJ's reasoning in arriving at his conclusion despite medical evidence suggesting limitations on the plaintiff's ability to bend. In *Golembiewski v. Barnhart*, 322 F.3d 912 (7th Cir. 2003), the Seventh Circuit found an ALJ's decision erroneous in part due its lack of discussion regarding the plaintiff's "limited ability to bend on account

10

of his bad back." *Id.* at 917. There, a medical examination showed that the plaintiff's back "was reduced to 40 degrees of flexion," but other medical reports in the record concluded that the plaintiff could "stoop occasionally." *Id.* The ALJ concluded that the plaintiff could stoop occasionally, but failed to discuss the plaintiff's flexion limitation. *Id.* The Seventh Circuit concluded that was erroneous.

This case is like *Golembiewski*. The record shows evidence of the plaintiff's limited flexion and difficulty bending, but it also contains evidence that the plaintiff can stoop frequently. The ALJ failed to discuss the relevant aspects of these reports or articulate how he weighed any relative to the others, meaning the decision did not provide an "accurate and logical bridge" between the conflicting evidence in the record and his conclusion. *Hess*, 92 F.4th at 676. Remand is therefore necessary, as a potential reduction in the plaintiff's ability to stoop would limit his occupational base or ability to work at all. SSR 96-9p, 61 Fed. Reg. 34474 (July 2, 1996).

### III.    THE ALJ'S ASSESSMENT OF PHYSICAL SYMPTOMS

The plaintiff next argues that the ALJ's assessment of his physical symptoms rested not on medical evidence, but rather on "the ALJ's own evaluation of the evidence and his own opinion regarding how to interpret that evidence." (R. 14 at 9–11.) Specifically, the plaintiff argues that while the ALJ credited the plaintiff's drowsiness and sleepiness symptoms, the ALJ failed to account for those symptoms in deciding the limitations those symptoms placed on his ability to work. (*Id.*)

The ALJ seemingly credited the plaintiff's testimony that his medications cause sleepiness and that his OSA causes drowsiness. (AR at 20–21.) The ALJ then stated that the RFC "included hazard and postural restrictions to take [those

11

symptoms] into account." (*Id.*) These restrictions included limiting the plaintiff to no climbing of ladders, ropes, or scaffolds and only occasional kneeling, crawling, climbing of ramps or stairs, or exposure to workplace hazards. (*Id.*)

The Commissioner is correct that an RFC determination "is a matter for the ALJ alone." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). But the ALJ still must "include a narrative discussion describing how the evidence supports each conclusion" by, for instance, "citing specific medical facts." SSR 96-8p, 1996 WL 374184 (July 2, 1996); *see also Lopez*, 336 F.3d at 539 (stating reversal is appropriate where a decision "lacks evidentiary support or an adequate discussion of the issues").

The ALJ's decision fails to cite specific medical facts on which its reasoning rests. Instead, in the two instances where the ALJ discusses the plaintiff's sleepiness and drowsiness, the ALJ simply states that the RFC "includes hazard and postural restrictions to take [the symptoms] into account." (AR at 21–22.) The ALJ does not point to any specific medical facts or nonmedical evidence to substantiate this statement. This alone warrants remand. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (stating failure to adhere to SSR 96-8p "in itself is sufficient to warrant reversal of the ALJ's decision").

The record also contains evidence showing that the plaintiff's OSA "persists" despite his use of a CPAP and "causes him to fall asleep during usual daily activities . . . [including] while driving." (AR at 379.)[4] It is unclear from the ALJ's decision how the RFC's postural and hazard restrictions would accommodate that symptom. Stated

---

[4] This finding is from Dr. James' February 2024 notes, which the ALJ did not characterize as not persuasive.

differently, the ALJ's decision lacked an explanation as to how the RFC's restrictions reflect the plaintiff's drowsiness, fatigue, and sleepiness. While the Commissioner contends that the opinions of Doctors Stern and Reddy "found virtually all of those precise [RFC] restrictions," (R. 16 at 11), those opinions do not appear to account for the plaintiff's sleepiness or drowsiness. Even setting that aside, the ALJ failed to articulate the basis for his conclusion, so the determination lacks an "accurate and logical bridge" from that evidence to his conclusion. *Hess*, 92 F.4th at 676. The ALJ's RFC determination with respect to the plaintiff's physical symptoms was therefore erroneous, and remand is appropriate for the ALJ to connect the evidence in the record to the RFC restrictions.

## IV. ASSESSMENT OF THE PLAINTIFF'S SUBJECTIVE STATEMENTS

Last, the plaintiff argues that the ALJ reversibly erred by discrediting the plaintiff's subjective statements describing his impairments. (R. 14 at 11–14.) Relevant regulations require an ALJ to link his assessment of a plaintiff's subjective statements to evidence and explain whether the statements are consistent with that evidence. SSR 16-3p, 81 Fed. Reg. 14166 (Oct. 25, 2017). An ALJ's assessment of a plaintiff's subjective symptoms is overturned only if the assessment is "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). An assessment is "patently wrong" if it "lacks any explanation or support." *Id.*

At his hearing, the plaintiff testified regarding his ability to engage in daily life activities, his course of treatment, and more broadly about his impairments and symptoms. (AR at 57–68.) The ALJ found the plaintiff's statements regarding the

"intensity, persistence and limiting effects" of his symptoms "not entirely consistent" with the record. (AR at 21.)

The ALJ's assessment was not patently wrong. The ALJ compared the plaintiff's statements to objective evidence in the record and noted inconsistencies between the two. (AR at 21.) For instance, the ALJ noted that while the plaintiff said that he uses a walker or cane once or twice a week, there was no evidence in the record supporting a prescription for any assistive device, and at least one doctor found the claimant had a non-antalgic gait without an assistive device. (*Id.*) The ALJ also noted that the plaintiff received "conservative care" and medication that alleviated at least some symptoms, both of which were at odds with the plaintiff's subjective descriptions of his symptoms. (*Id.*) This assessment was sufficiently explained and supported, and it therefore was not "patently wrong."

The plaintiff argues that the ALJ failed to explain how the plaintiff's description of his daily activities was inconsistent with the record and that his ability to survive day-to-day is not grounds for finding his subjective statements inconsistent with the record. (R. 14 at 11–12.) But the ALJ did not equate the plaintiff's statements about his daily activities with an ability to work full time without restriction. Rather, he evaluated those statements in light of other evidence in the record and found him able to perform some, but not all, work. (AR at 21.) Because the ALJ provided an explanation that took medical evidence into account, the decision was not patently wrong. *Burmester v. Berryhill*, 920 F.3d 507, 510–11 (7th Cir. 2019) (ALJ did not reversibly err by finding plaintiff's statements about daily activities inconsistent with

14

other record evidence). While the ALJ described the plaintiff's statements regarding his daily activities in a paragraph above the ALJ's description of inconsistencies with the record, the Court reviews ALJ's discussion of the plaintiff's subjective symptoms in light of the totality of the evidence. *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2014) (citations omitted). The ALJ's determination that the plaintiff's statements were not entirely consistent with the record was supported by other evidence in the record, and therefore was not erroneous.

### CONCLUSION

For the reasons stated in this order, the Court grants the plaintiff's motion for summary judgment [14] and denies the Commissioner's motion for summary judgment [16]. The decision of the Commissioner is reversed and remanded for further proceedings under 42 U.S.C. § 405(g) consistent with this Memorandum Opinion and Order.

Date: April 24, 2026

_____
JEREMY C. DANIEL
United States District Judge